IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE MASHANTUCKET PEQUOT TRIBE ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| ) | 3:02 CV 1828 (JCH) |
| v. ) | |
| ) | |
| RAYMOND REDICAN, JR. ) | |
| ) | September 12, 2005 |
| Defendant ) | |

**THE MASHANTUCKET PEQUOT TRIBE'S PROPOSED FINDINGS OF FACT**

Plaintiff submits the following proposed Findings of Fact based upon the evidence and testimony in the captioned action[1].

1. Plaintiff The Mashantucket Pequot Tribe (Tribe) is a federally recognized Indian Tribal Nation. (PX-103) (RA-1).

---

[1] No copy of the transcript of the hearing held on August 27, 2005 was obtained so that testimony is paraphrased. The paraphrasing in the proposed findings of fact is designated by the letter "P" followed by the name of the witness.
  Plaintiff's exhibits are designated "PX". References to Redican's response to the request for admissions are designated "RA", and Redican's responses to the interrogatories are designated "RINT".

1

2.     Defendant Raymond Redican, Jr. (Redican) resides at 6 Jarad Road, Dracut, Massachusetts 01826. (P-Redican).

3.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et* seq. as amended by the Intellectual Property and Communications Omnibus Reform Act of 1999, Public Act 106-113; the Connecticut Trademark Act, Conn. Gen. Stat. 35-11a *et* seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a *et* seq.; and the Connecticut common law.

4.     The Tribe opened the Foxwoods Resort Casino (FOXWOODS) on February 19, 1992, and it is a wholly owned operation of the Tribe. (PX-16) (RA-2).

5.     Since the opening of the Casino, the Tribe has expended millions of dollars in advertising and marketing to promote the FOXWOODS Casino and its operations.  In the past three years, the advertising expense has been in excess of 26 Million Dollars annually and the total marketing expense has been several times larger.  (P-DeSalvio).  That advertising has included print advertising, internet advertising, billboard advertising and radio and television advertising. (RA-3).

6.     The FOXWOODS personnel take immediate steps to deal with complaints in order to protect its good will and reputation (P-DeSalvio).

7.     The FOXWOODS Casino is one of the largest casinos in the world (RA-5) and its revenues exceed One Billion Dollars annually. (P-DeSalvio).

8. The Tribe has registered the domain names, *inter alia*, foxwoods.com and foxwoodscasino.com (PX-9, 10) (RA-7).

9. The FOXWOODS website is critical to its marketing operations, and has grown in importance as the FOXWOODS Casino uses of the website for communications with patrons, as evidenced by a printout of the pages of the FOXWOODS website on August 25, 2005 (PX-106).

10. In the month of July 2005 there were 12 million hits on the FOXWOODS website. (P-DeSalvio).

11. The Tribe has obtained a number of federal trademark registrations of the trademark FOXWOODS and of the FOXWOODS logo for *inter alia*, casinos, hotel accommodations, retail stores, night clubs, spas and bingo games (PX-1-8).

12. As a result of its marketing activities and the quality of its services, the FOXWOODS reputation and good will extend not only throughout the Northeast, but also throughout the United States and in foreign countries. (P-DeSalvio).

13. The Tribe provides a number of services to surrounding communities and other Indian tribes, and a portion of its funds were used to create a museum and library. Foxwoods has also provided millions of dollars to the State pursuant to an agreement with the State. (P-DeSalvio).

14. The trademark FOXWOODS is famous for casino and resort services.

(P-DeSalvio).

15. Redican is an individual who has registered various domain names under different names including Foxwood.On-line Casino, Inc., Commonwealth Internet Services, CBNO Foxwoods.com, Foxwood.com and Foxwood.org, and he has also used CBNO Foxwood.com in connection with purported services on his foxwood.com website. (PX-23-25) (RA-9).

16. During the period March 13, 1997 to March 15, 1997, Redican effected domain registrations of at least six domain names:

>    Brookline.net
>    Nashua.org
>    Stow.net
>    Quincy.org
>    Chelmsford.org
>    Wayland.net

These registrations identified the registrant as Commonwealth Internet Services and Redican as the Administrative Contact. (PX-105) (P-Redican).

17.     Redican has registered at least 40 domain name registrations (RA-12). A listing of many of the domain names and the date of initial registration are as follows:

| | | |
|---|---|---|
| Somerville.com | - | May 22, 1997 |
| Waltham.com | - | March 8, 1999 |
| Haffners.com | - | March 26, 2000 |
| Tyngsborough.com | - | March 6, 1999 |
| Natick.org | - | October 8, 1999 |
| Sherborn.com | - | March 8, 1999 |
| Watertown.com | - | March 8, 1999 |
| Waltham.org | - | March 8, 1999 |
| Somerville.org | - | October 27, 1999 |
| Dracut-MA.com | - | December 8, 2000 |
| Brookline.net | - | March 14, 1997 |
| Nashua.org | - | March 13, 1997 |
| Stow.net | - | March 14, 1997 |
| Quincy.org | - | March 14, 1997 |
| Chelmsford.org | - | March 15, 1997 |
| Wayland.net | - | March 14, 1997 |

18.     These registrations are based upon the names of cities and town in Massachusetts and New Hampshire. (P-Redican) (RA-12).

19.     Substantially all of the above registrations have been relinquished by Redican (P-Redican).

20.     Redican has visited the FOXWOODS facility and engaged in gaming activities on a number of occasions since at least as early as 1999. (PX-98) (P-Redican) (P-DeSalvio).

21. On May 22, 1997, Redican registered the domain name foxwood.com identifying the registrant as "Foxwood On-Line Casino, Inc". Redican later changed the name of the registrant to Foxwood.Com (PX-23, 26, 60).

22. On March 25, 2000, Redican registered the domain name foxwood.org (CIS) with the registrant designated as Foxwood.org (CIS). (PX-24).

23. On August 26, 1998, Redican registered the domain name foxwoods.net with the registrant designated as Commonwealth Internet Services (CIS). (PX-25).

24. On August 29, 1998, Redican registered the domain name foxwoods.org with the registrant designated as Commonwealth Internet Services (PX-101).

25. Redican asserts that he obtained these domain names in connection with the project of building a group of FOXWOOD community interest sites. (RA-10).

26. In his declaration in support of his motion to dismiss for lack of personal jurisdiction (PX-17), Redican stated:

 In April and May of 2001, in response to numerous inquiries over the previous four (4) years, I contacted over 50 Foxwood organizations to determine if there was any continuing interest in purchasing the foxwood.com domain name.

27.  Redican sent communications to various entities, as well as FOXWOODS Casino using FOXWOOD seeking to sell, lease, rent or trade the Foxwood.com registration. There were some other e-mail exchanges.  (PX-99-8 to PX-99-17).

28.  Redican has used AfterNIC in connection with the sale of one domain name registration which he stated was not related to either FOXWOOD or FOXWOODS.  (RA-14).

29.  The foxwoods.net and foxwoods.org registrations were not renewed by Redican. (P-Redican).

30.  The Tribe is concerned with other parties who use domain names incorporating the mark FOXWOODS since this is a famous trademark and third parties can readily be confused if a person makes a typographical error and accesses a website of another party which features gaming or resort services, or products sold by the Tribe in its retail stores, because this may lead the person to believe there is some relationship to the FOXWOODS Casino.  (P-DeSalvio) (P-Blackmon).

31.  FOXWOODS is concerned with any party using a domain name incorporating FOXWOOD since a person may consider FOXWOOD to be the same as FOXWOODS especially when the accused website has any reference to gaming

or resort activities because this may lead the person to believe there is some relationship to the FOXWOODS Casino.  (P-DeSalvio) (P-Blackmon).

      32.     Any such inappropriate use of FOXWOODS or FOXWOOD will dilute the value of the FOXWOODS trademark.  (P-DeSalvio).

      33.     Personnel of the FOXWOODS Casino refer apparent inappropriate or confusing use of FOXWOODS or FOXWOOD to the Tribe's attorneys.  (P-DeSalvio) (P-Blackmon).

      34.     The Tribe's attorneys review the manner of use and determines whether the use is likely to produce confusion and dilute the value of the FOXWOODS mark.
(P-Blackmon).

      35.     When the review indicates there is a sufficient likelihood of confusion or dilution, a "cease and desist" letter is sent.  Generally, this will cause termination of the infringing use.
(P-Blackmon).

      36.     If the cease and desist letter does not effect termination of the infringing activity, the matter is referred to outside intellectual property counsel who then communicates with the other party to effect termination.  If that effort is unsuccessful, litigation may be instituted.  (P-Blackmon).

37.     On November 10, 1997, attorneys for the Tribe sent a letter to Redican demanding that he cease use of and transfer the domain name registration of Foxwood.com and cease use of "Foxwood On-Line Casino".  (PX-60).

38.     On August 10, 2001 after the Tribe had become aware that the internet gambling sites were being promoted on the Foxwood.com website, and that Redican was attempting to sell his FOXWOOD domain name registration, Wade Blackmon, a Tribal attorney, sent a letter to Redican demanding that such activity cease and that the registration be assigned to the Tribe.  (PX-58-59).

39.     On September 6, 2001, Peter Costas sent a letter iterating the position of the Tribe and seeking assignment of the registration for which the Tribe would reimburse Redican for his expenses in registering and maintaining the domain name registration.  (PX-56).

40.     On June 20, 2002, Redican sent an e-mail to a number of FOXWOODS employees offering to sell the Foxwood.com website for $19,999,999 and offering a 30% commission to the employee who was able to effect such a sale.  (PX-65).

41.     On June 30, 2002, Redican sent an e-mail to William Sebastian offering him $3,500,000 if he could help effect a sale of the domain name registration for $20 million.  (PX-68).

42. Redican obtained a Webtrends report showing traffic on the websites Foxwoods.com and Foxwood.com. Redican stated that the Foxwood.com website had three times more activity. (RA-16) (P-Redican).

43. At some point in time and certainly prior to June 4, 2002, the home page for the Foxwood.com website included advertising icons and hyperlinks to a number of gaming sites (PX-40-46).

44. Redican, or his designees, derived income from the gaming advertisers on the website Foxwood.com (P-Redican).

45. The income from advertisers on the website Foxwood.com was paid to persons designated by him including Michael Whiting, Paula Saing and Christopher J. Caron. (RA-26).

46. Redican has obtained compensation from the following companies who place advertisements on websites on behalf of client companies: DoubleClick, Inc., 1997-2003, Commission Junction, 1997-2003, PopUp Sponsor, 2002-2003, Vivendi Universal, 2003. (RINT-12).

47. In addition to his registration of FOXWOOD/FOXWOODS domain names, on August 16, 1999 Redican sought to obtain a federal trademark registration of FOXWOOD.COM but his application was rejected because, *inter alia*, of likelihood of confusion with the mark FOXWOODS which was the subject of the Tribe's registrations. That application was abandoned (PX-22).

48.     Although Redican contends that he obtained the registration of FOXWOOD.COM and other FOXWOOD/FOXWOODS domain names in connection with the project of building a group of Foxwood community interest sites (RA-10), with the exception of the FOXWOOD/FOXWOODS domain names and ROLLERBLADING domain name, Redican's registrations are of the names of actual cities and town in Massachusetts and New Hampshire.  (PX-105) (RA-10) (P-Redican).

49.     The record supports the conclusion that Redican registered the domain name Foxwood.com and other FOXWOOD/FOXWOODS domain names for the improper purposes of, *inter alia*, trading upon the famous FOXWOODS trademark of the Tribe,

engaging in activities likely to cause confusion with and dilution of the registered mark FOXWOOD, and, by such activities, to coercing the Tribe to pay a substantial amount of money for an assignment of the domain name registration.

50.     FOXWOOD is confusingly similar to the Tribe's registered trademark FOXWOODS which was famous or at least distinctive in 1997 when Redican obtained registration of foxwood.com in the name of Foxwood On-Line Casino Inc. Redican had a bad faith intent to profit from such registration and his use of that website in some manner relating to casinos and gaming.

51.     By August 26, 1998, the FOXWOODS trademark was famous for casino and resort services.  The registration of the domain name Foxwoods.net on August 26, 1998 further evidences Redican's intent to trade upon the reputation and good will of the mark FOXWOODS or to seek to pressure the Tribe into purchasing the registration of that domain name.

52.     By August 29, 1998, the FOXWOODS trademark was famous for casino and resort services.  The registration of the domain name Foxwoods.org on August 29, 1998 further evidences Redican's intent to trade upon the reputation and good will of the mark FOXWOODS or to seek to pressure the Tribe into purchasing the registration of that domain name.

53.     Although Redican was undoubtedly aware that the home page for Foxwoods.com contained advertising and hyperlinks to gaming sites and other

activities associated with gaming, he either sought the placement of that advertising on his website or failed to take any action to remove it from his website because of his desire to derive income from the advertisements of, and diversion of patrons to, the websites of other gaming operations.

54. Accordingly, Redican had a bad faith intent to profit from his registrations and use of FOXWOOD and FOXWOODS domain names.

                THE MASHANTUCKET PEQUOT TRIBE

By_____
    Peter L. Costas
    ct04260
    PEPE & HAZARD LLP
    225 Asylum Street
    Hartford, Connecticut 06103
    (860) 241-2630

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing document was served by first class mail, postage prepaid, upon Stephen P. McNamara, St. Onge, Steward, Johnston & Reens LLC, 986 Bedford Street, Stamford, Connecticut 06905.

Dated: September 12, 2005          _____
                                                    Peter L. Costas

14