FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT** 2005 SEP 16  A 8: 41

--------------------------------------------------------------x
:
THE MASHANTUCKET PEQUOT TRIBE          :          US DISTRICT COURT
:                   BRIDGEPORT CT
                Plaintiff               :          CIVIL ACTION NO.
                                        :          3:02 CV 1828 (JCH)
        v.                              :
                                        :
RAYMOND REDICAN, JR. D/B/A CBNO         :
FOXWOOD.COM (CIS)                       :
                                        :          September 12, 2005
                Defendant.              :
                                        :
--------------------------------------------------------------x


# DEFENDANT'S PROPOSED FINDINGS OF FACT


## I. The Parties

1.      Plaintiff, Mashantucket Pequot Tribal Nation, is located at 2 Matts Path,

        Mashantucket, Connecticut 06339 ("MPT").

2.      Defendant, Raymond R. Redican, Jr., d/b/a CBNO FOXWOOD.COM (CIS),

        Commonwealth Internet Services (CIS), Center For Business and Not For Profit

        Organizations (CBNO) is a resident of the Commonwealth of Massachusetts having

        an address at 6 Jared Rd, Dracut, MA 01826 ("Mr. Redican").

3.      MPT originally brought suit against Mr. Redican for trademark infringement,

        dilution, false designation or description, and cyberpiracy under 15 U.S.C. 1125.

        MPT also asserted dilution under Conn. Gen. Stat. 35-11i(c), common law trademark

        infringement, and unfair trade practices under Conn. Gen. Stat. 42-110a, along with a

monetary demand of $100,000. Defendant successfully moved for a jury trial (Ruling, May 2, 2005) , and in response Plaintiff amended its complaint on August 3, 2005 (Granted August 16, 2005) to cancel all claims for monetary damages, and consequently, this case was tried to the court on August 29, 2005.

4.    Mr. Redican asserts that MPT's claims are barred by laches, that "*foxwood*" and "*foxwoods*" are among other things common geographic and descriptive terms, and that Mr. Redican used the name **CBNO *FOXWOOD.COM (CIS)*** and the domain name ***foxwood.com*** in good faith.

## II. MPT's Trademark FOXWOODS

5.    On November 7, 1995, MPT registered the FOXWOODS mark Registration No. 1,933,316.  The mark comprised the word "*FOXWOODS*" over the tribal logo which is of a fox and a tree on a hill.  On August 10, 2002 this registration was cancelled by the USPTO.

6.    On November 7, 1995, MPT registered the FOXWOODS mark, Registration Nos. 1,933,313 and 1,933,319, for services such as entertainment, casinos, gaming, lodging, retail, and Native American cultural services.  PX 7-8.

7.    On November 14, 1995, MPT registered the FOXWOODS mark as a non distinctive logo mark Registration No. 1,935,673, for services such as lodging, retail, and dining. PX 2.

8.    On March 12, 1996, MPT registered the FOXWOODS mark, Registration No. 1,961,723, for products such as American Indian newsletters, pamphlets, and literature. PX 1.

2

9.     On November 19, 1996, MPT registered the FOXWOODS non distinctive logo mark, Registration No. 2,016,903, for products such as information materials and promotional paraphernalia. PX 5.

10.    Plaintiff has failed to allege ownership of a Connecticut State Registration for FOXWOODS and therefore has no basis to assert a claim for infringement of registered Connecticut trademarks as alleged in the Fourth Count of the Complaint.

11.    On April 25, 1997, MPT registered the domain name FOXWOODSCASINO.COM. PX10.

12.    On July 11, 1997, MPT registered the domain name FOXWOODS.COM reflecting its legal name. PX 9.

13.    On July 21, 1998, MPT registered the FOXWOODS mark, Registration No. 2,174,126, for non-equestrian wearing apparel. PX 6.

14.    On July 21, 1998, MPT registered the FOXWOODS mark Registration No. 2,174,127. On April 23, 2005 this registration was cancelled by the USPTO.

15.    On December 11, 1998, MPT registered the domain name PEQUOTCASINO.COM. PX 9

16.    MPT advertises its entity Foxwoods Resort Casino at FOXWOODS.COM. PX 15, 105.

17.    MPT's Foxwoods Resort Casino is a casino gaming establishment. **PX 12, 13, 15, 16, 18, 19**.

18.    MPT's witness, Robert DeSalvio, Executive Vice President, Marketing for Foxwoods Resort and Casino stated that *foxwoods.com* was trademarked. However, no evidence of any registration of foxwoods.com was introduced in evidence.

### III. Mr. Redican's use of CBNO FOXWOOD.COM (CIS)

19.    Mr. Redican first became consciously aware of the term FOXWOOD while doing a

book report on *Animal Farm* by George Orwell between the ages of  7 yrs – 9yrs

(1983 – 1985) prior to the existence and conception of Foxwoods Resort Casino.

20.    On May 22, 1997, the domain name *foxwood.com* was registered for the benefit of

Ray Redican Jr. by his internet service provider, Global Communications

InternetWorking Corporation (GLCI) .  Mr. Redican did not register the domain name

himself.  The internet service provider identified the domain name owner as the

"*Foxwood Online Casino.*"  MPT, through its outside counsel, later objected to this

usage in November 1997, and therefore, when Mr. Redican was renewing the domain

name in 1999, he changed the identification of the domain name registrant to

Foxwood.com  **PX 23, PX-26-1DX 515, 518**.

21.    MPT registered its domain name FOXWOODS.COM on July 11, 1997, after Mr.

Redican has registered *foxwood.com*.  **PX 9**.  Although Mr. Redican had obtained the

domain name *foxwood.com*, he did not at the same time register FOXWOODS.COM

as it was in fact available to the general public.  Mr. Redican was not aware of

Plaintiffs' FOXWOODS mark in May 1997.

22.    On November 10, 1997, Stephen Quigley, counsel for MPT, wrote to Mr. Redican

claiming that the use of the *foxwood.com* domain name infringed MPT's trademarks.

Mr. Quigley indicated that MPT "require[d]" that Mr. Redican enter into a written

agreement to transfer the domain name to MPT.  Mr. Quigley indicated that MPT

intended to "*aggressively protect its name and mark against any risk of confusion or*

*dilution.*" **PX 60**. The first time Mr. Redican became aware of MPT's FOXWOODS mark was upon receipt of this letter.

23.    Plaintiff did not aggressively go after Mr. Redican. MPT acquiesced and did not take any further action or bring suit against Mr. Redican subsequent to the November 10, 1997 until the filing of this suit on October 17, 2002, nearly five (5) years after Plaintiff's initial cease and desist letter to Mr. Redican.

24.    Mr. Redican began measuring traffic to CBNO FOXWOOD.COM (CIS) domain in the summer of 1997. Simultaneously Mr. Redican began research and the task of compiling content for the website. The web site was online and fully developed in 1998. Since that time there have been improvements, changes and editing made using Microsoft FrontPage. At times the website has been offline due to lack of funds associated with maintaining a website (advertising, computer software, books, dial-up, hosting, phone, yearly registration fees and college classes) . Mr. Redican put substantial time, effort and money into developing his website based on MPT's acquiescing and in reliance on MPT's failure to aggressively proceed with its infringement claim initially sent on November 10, 1997.

25.    In the late 1900's – early 2000's Mr. Redican developed a business plan and purchased The America Online (AOL) Time Warner Keyword FOXWOOD. Redican's business plan was to develop keyword specific websites with relevant content that act as portals through which businesses, communities and other organizations can advertise and host their goods and services. Mr. Redican's team received at least one award at the University of Massachusetts Lowell's first 10K business plan competition. PX 32, 34.

5

26. During his development of the CBNO FOXWOOD.COM (CIS) website, Mr. Redican also developed a business plan and website for the domain name ROLLERBLADING.COM. CBNO ROLLERBLADING.COM (CIS) distributes equipment and apparel relating to recreational activities including sales and services thereof and provides informational content relating to skating books, government ordinances, movies, music, and products relating to skating. This website was challenged by Benetton/Rollerblade Inc. in an ICANN domain name arbitration proceeding, August 24, 2000 Mr. Redican prevailed in which three arbitrators held unanimously that "[G]enericness, if established, will defeat a claim of trademark rights, even in a mark which is the subject of an incontestable registration. " During this process, Mr. Redican developed beliefs and understandings about what types of domain name uses were permissible and which were not. DX 554-556. Mr. Redican operated and developed the CBNO FOXWOOD.COM (CIS) website in accordance with and in reliance on these beliefs and understandings. During this time Mr. Redican also took a cyberlaw course at the University of Massachusetts Lowell with Professor Michael Jones.

27. In response to yearly offers to buy the domain name *foxwood.com* sent by various persons, **DX 523**, Mr. Redican called over 50 organizations to see if they would be interested in purchasing the domain name and on May 1, 2001, Mr. Redican sent a follow up letter to sell the domain name *foxwood.com* to at least 50 different companies and other persons using the name "foxwood." PX-59; DX 524.

28. On August 9, 2001, Mr. Redican received an offer to sell the domain name for $1,000, but did not accept it. **DX 523**.

29.    On August 10, 2001, Mr. Wade Blackmon, in-house counsel for MPT, wrote a letter to Mr. Redican accusing him of using the *foxwood.com* site to unlawfully profit from MPT's trademark. Mr. Blackmon stated that Mr. Redican must assign the domain name to MPT. If he failed to do so, Mr. Blackmon indicated that MPT would consider pursuing a legal remedy. **PX 58.**

30.    On September 6, 2001, Mr. Peter Costas, litigation counsel for MPT, followed up on Mr. Blackmon's letter and contacted Mr. Redican. Mr. Costas offered to acquire the domain name by assignment in exchange for Mr. Redican's cost of registration. **PX 56.** On September 7, 2001 in response to the letter from Peter Costas, Defendant with the help of an American Express attorney mailed a Certified Return Receipt letter to both Mr. Blackmon and Mr. Costas expressing his unassailable, bona fide, good faith legitimate legal interests & belief that he was properly using the domain name *foxwood.com,* **PX 55,** and that Defendant had no intention of allowing the MPT, Wade T. Blackmon or Peter L. Costas and Pepe & Hazard LLP to misuse the Anticybersquatting Consumer Protection Act (ACPA) to deprive Commonwealth Internet Services (CIS) of the domain name through Reverse Domain Name Hijacking (RDNH). Finally Defendant requested a letter of apology and assurances that MPT would cease and desist all unwarranted harassment , and took the position that if they didn't Defendant, would investigate the pursuit of reporting Wade T. Blackmon and Peter L. Costas to the appropriate Bar Associations.

31.    October 4, 2002 since Mr. Redican had not received a letter of apology and felt harassed by Plaintiff's counsel, Mr. Redican filed grievances against Mr. Wade T. Blackmon and Mr. Peter L. Costas with the State of Connecticut Judicial Branch

Statewide Bar Counsel. These grievances were filed less than two weeks before this action was filed and served on Mr. Redican.

32.  Mr. Redican registered the domain name FOXWOOD.ORG on March 25, 2000. **DX 517**, but he did not maintain that domain name registration and it has since been re-registered by a third party. MPT has tried to impute recent content on the FOXWOOD.ORG website to Mr. Redican but there is no evidence that Mr. Redican is responsible for such content and the Plaintiff attorney Peter Costas did apologize to the Court during Trial for making such an accusation.

33.  In May 2002 Redican extended the renewal of the foxwood.com registration for the longest allowable time permitted by the Internet Corporation For Assigned Names and Numbers (ICANN) which was then 9 years until 2011.

34.  May 2002 Mr. Redican engaged in electronic email correspondence with Clay Wagner and discussed the sale of the domain name's *foxwood.com* & foxwood.org for $8 – $20 million. Based on communications with Mr. Wagner, Mr. Redican believed that members of the tribal council of Plaintiff MPT were interested in purchasing the domain name *foxwood.com* for $8 million. **PX 87, 88**. This belief led him to send a follow-up email to employees of MPT regarding the potential purchase of the domain.

35.  Since Plaintiff had expressed interest in acquiring the *foxwood.com* domain name as early as 1997 Redican spoke to Wade Blackmon and inquired as to whether Plaintiff would like to have an appraisal conducted. Blackmon stated that their position was that it (the domain names) had no value to Redican and that it would never have value

to Redican. Mr. Redican expressed orally to Mr. Blackmon his bona fide, complete, legitimate, and unassailable rights in the domain.

36. Mr. Redican was led to believe that Clay Wagner knew MPT tribal members and that Mr. Wagner had the same personal trainer as then Tribal Chief Kenneth Reels. Mr. Redican further believed that Mr. Wagner had met with MPT tribal members at an extra mural meeting in New York City with regards to the purchase of Defendant's domain names and that he had received an offer of $8 million to Mr. Redican with $4 million earmarked for tribal members that were going to vote in favor of the purchase at an upcoming tribal meeting and that they at the time were locating allocation funds from various departments within the MPT. Although listed as a trial witness, Mr. Wagner avoided service of a trial subpoena and did not appear at trial.

37. MPT has offered the records of the "Wampum Card" transactions as evidence of Mr. Redican's visits to the Foxwoods Resort Casino, however, this only shows the card was present, not Mr. Redican himself.

38. Defendant created CBNO FOXWOOD.COM (CIS) to provide cultural, demographic, historic and tourism information related to all FOXWOOD businesses, municipalities and organizations by means of a global computer information network. Mr. Redican's CBNO FOXWOOD.COM (CIS) website provides information on numerous topics related to the term "foxwood." The informational content on Mr. Redican's website includes information on numerous FOXWOOD companies found in the yellow pages, municipalities, residential areas, real estate developers and developments, farms and other locations.

39.    The CBNO FOXWOOD.COM (CIS) website displays a partitioned screen on the web-browser. The frame to the left displays a sitemap that lists a variety of subject headings. The user clicks on the subject heading and the link displays the content for that heading on the right frame. In alphabetical order the subject headings include topics such as: advertising, affiliate, books, communities, contact, dining, directions, employment, equestrian, genealogy, marriages, municipalities, music, obituaries, partnerships, plants, religion, and routes.... Each heading leads the web-surfer to either a frame displaying information that relates to the term "foxwood" or information relating to Mr. Redican's endeavors as a web entrepreneur. While every page accessed displays an advertising banner, Mr. Redican has a page dedicated to advertisements. **DX 510**; PX-32-2-3

40.    Mr. Redican places Javascript and HTML code provided by various advertising agencies into his webpages. The code causes the webpage to displays an advertisement. These ads change every time the webpage is refreshed by the website visitor. The content of the advertising is controlled by the advertising agencies who create and send particular advertising to Mr. Redican's website.

41.    Some advertising agencies allow an affiliate website to opt out of certain types of online advertising. To the extent Mr. Redican is given the option, he opts out of having advertising agencies provide gambling related and non-family related advertising on his website.

42.    The advertisements displayed on Mr. Redican's web-page include MasterCard, Napster, TMP Express, LowerMyBills.com, a service for finding people, eBay, and pet products and services. **PX 32, 40, 47.**

43.     Plaintiff submitted printouts of a few advertisements that appear to have been on
        CBNO FOXWOOD.COM (CIS) at one time in 2002 advertising "*Golden Tiger
        casino*" and "*Blackjack Ballroom*." During trial Plaintiff implied these were ads that
        were hyperlinked to other websites but no HTML (Hyper Text Markup Language)
        source code was offered to prove the assertion.   The ads were apparently located on
        a page labeled www.foxwood.com/advertising/topadbanner.html, which is not the
        home page of *foxwood.com*  The ads were not prominently displayed and were not
        visible to the website visitor unless the visitor scrolled the page down to the place
        were the ads were located.

44.     The printouts of the Golden Tiger casino website and Blackjack Ballroom would not
        lead persons seeing these websites to believe that they were sponsored by MPT .
        There is no mention of FOXWOODS or FOXWOOD on such websites.   There was
        no evidence that any gambling was conducted at these websites, and there was no
        evidence presented as to how a person would engage in any gambling activities.
        According to website printouts (PX-42) software is required to be downloaded and
        installed to engage in gameplay, but no evidence as to what the games were or how
        they could be played was presented.

45.     At no time has Mr. Redican consciously used *foxwood.com* to host or provide any
        type of online gambling products or services, or any other products or services which
        compete with MPT's FOXWOODS products and services.

46.     The evidence submitted suggests even if there were gambling advertisements on the
        website the percentage of gambling ads taken in total is very minuscule, requiring
        significant work to locate and identify.

11

## IV. Third Party Uses of "Foxwood"

47.    Foxwood, Fox Woods and Foxwoods are common geographic and descriptive terms and Defendant's use of FOXWOOD.COM is in connection with such meanings and does not constitute infringement.

48.    Foxwood is a common name used concurrently in many countries including but not limited to Brazil, Canada, Denmark, Northern Ireland, United Kingdom and the United States.  "Foxwood" and "Foxwoods" used in over 300 municipalities, towns and businesses, many of whom predate MPT's use of FOXWOODS, and which are not sponsored by or endorsed by Plaintiff.

49.    "Foxwood" is used in the name of many municipalities throughout the United States as Geographical Indicators.  These are Foxwood, AL, Foxwood, AZ, Foxwood, GA, Foxwood, MD, Foxwood Acres, NC, Foxwood Hills, SC, Foxwood, TX, and Foxwood, VA FOXWOOD also appears in other states' Avenues, Boulevards, Courts, Roads, Streets, Terraces and Ways.  PX 32.

50.    Third party use of the term "foxwood" is widely used to identify their goods and services.  Such uses include Foxwood Lofts, Foxwood Glenn Homeowners' Association Inc., Foxwood Apartments, Foxwood Alpacas, Foxwood Hills, Foxwood Country Club, Foxwood Estates, Foxwood Farm Arabians, Foxwood Room at Fox Hollow, Foxwood Consultants Ltd., Foxwood (identifying a housing community), Foxwood Condominium, The Foxwood (an apartment style advertised by Carrington Homes), Foxwood Garden Centre, Foxwood Isle Condominiums, Foxwood Flooring, Inc., Foxwood B&B, Villas of Foxwood Hills, Foxwood Subdivision, and Foxwood

Homes, Inc. Foxwood is also a, song, and among other things a color  DX 540-542, 545, 546, 551, 553.

51.   On July 1, 2003 and July 16, 2002 QVC, INC. obtained trademarks for FOXWOOD for tableware.

52.   "Foxwood" is also a species identified as a tree within the Dalbergia genus and a plant that is poisonous for Rabbits.  DX 543-44.

53.   Many other persons besides Mr. Redican or MPT have registered "foxwood" formative domain names.  These include but are not limited to http://www.foxwood.kent.sch.uk/, http://www.foxwoodinc.com/ (in business since 1982), http://www.foxwoodgiantschnauzers.com/ (established in the early 1980's), http://www.foxwood.info, http://www.foxwood.org, http://www.fox-wood.co.uk/, http://foxwoodlakeestates.com/, http://www.foxwoodinnandsuites.com/, http://www.foxwood.de/, http://www.foxwoodinn.com/, http://foxwoodhillsresort.com/, http://www.foxwoodglen.com/, http://www.foxwoodelect.8m.com/, http://www.foxwoodestates.com/, http://www.foxwoodfarm.org/, http://foxwoodfarms.com/, http://www.foxwoodgardens.com/, http://foxwoodcampground.com/, http://www.foxwoodbedandbreakfast.com/, http://www.foxwoodapartments.com/, http://www.foxwood-temple.net/ DX 530-535, PX 37-38.

## V. CONCLUSIONS

54.   The CBNO FOXWOOD.COM (CIS) *foxwood.com* website is an online information resource about all things "*Foxwood.*"  It is like a telephone directory combined with

other information sources. It does not itself purport to be anything other than an information source.

55. Specifically at no time did Mr. Redican consciously place, provide or purposely host any type of online gambling products or services, or any other products or services which compete with MPT's FOXWOODS products and services. When advertisements of this type were brought to the attention of Mr. Redican, for example by Wade Blackmon he made the proper changes in a timely manner. The CBNO FOXWOOD.COM (CIS) website also includes a disclaimer.

56. Plaintiff states it does not seek to enforce its rights against those uses of the mark that do not relate to gaming or the American Indian culture. MPT's policy is not to confront another's use of the term "foxwood" unless MPT believes that the individual intends to engage in its similar product and services registered under the mark. Thus, MPT has shown that it does not find it objectionable for another to use the term *"foxwood"* unless there is a direct conflict.

57. MPT's witness, Robert DeSalvio, Executive Vice President, Marketing for Foxwoods Resort and Casino testified that it would be proper for print media, or an informational website to include advertising from competitors of MPT. He further testified that as long as what Mr. Redican did wasn't related to MPT's business the use of *foxwood.com* did not pose a problem for MPT.

58. Mr. Redican uses *foxwood.com* in a primarily descriptive manner. His website relates to "all things FOXWOOD" and that use of the domain name *foxwood.com* is not use of the word FOXWOOD as a trademark that identifies him as a unique source of goods or services. Since there is no trademark use there is no trademark infringement.

59.   Even if Mr. Redican were using *foxwood.com* as a trademark, the following facts are found:

a.   MPT's FOXWOODS text and logo mark is weak mark, given widespread international concurrent third party use of FOXWOOD and FOXWOODS.  Redican contests Plaintiff's marks on the basis of being , descriptive, not arbitrary, fanciful, distinctive or famous.

b.   Mr. Redican's services of providing an informational website are very remote from MPT's gambling and related products and services.

c.   Mr. Redican's *foxwood.com* domain name is similar to the FOXWOODS trademark but they are phonetically distinguishable.  The reading of the Defendant's web site will eliminate the likelihood of confusion because of the noticeably different content.  The look and feel of the two web sites are not similar.

d.   There is no evidence of actual confusion.  The paucity of evidence of actual confusion weighs heavily against Plaintiff's ability to show a likelihood of confusion.

e.   There is no evidence of a knowing adoption of MPT's FOXWOODS trademark; Mr. Redican was not aware of MPT's FOXWOOD mark until receipt of the November 1997 letter from their counsel. There is no evidence of bad faith or an intent to confuse.

f.   There is no likelihood of overlap in channels of trade, for example, in the same or similar stores or outlets.

g.   There is no evidence regarding purchaser care.

h.   Plaintiff MPT is now expanding its website usage but does not appear to intend to operate an informational website about "*all things Foxwood*

60.    There is no evidence of actual confusion, or any survey or other proof establishing confusion between Foxwoods and *foxwood.com*.

61.    Mr. Redican is not infringing Plaintiffs trademark.

62.    Mr. Redican's use of CBNO FOXWOOD.COM (CIS) does not lessen the capacity of the plaintiff's FOXWOODS mark to identify and distinguish goods or services.

63.    Mr. Redican believed and had reasonable grounds to believe that the use of the CBNO FOXWOOD.COM (CIS) domain name was a fair use or otherwise lawful.

64.    Mr. Redican's registration and use of the domain name CBNO FOXWOOD.COM (CIS) was not made in bad faith.

65.    MPT filed a complaint against Mr. Redican on October 17, 2002, 4 years and 11 months after its original letter to Mr. Redican.  Mr. Redican was served over 5 years after Plaintiff's original letter to Mr. Redican.  Since Plaintiff stated at trial controls are put in place to monitor and protect their mark they must have done a precursory investigation and discovered the many uses of foxwood(s) then filed this unmeritorious civil action.

66.    There is a presumption of laches due to MPT's delay of more than three years.

67.    MPT's delay in filing suit was unreasonable.

68.    MPT has not offered any reasonable excuse for its delay.

69.    Mr. Redican was prejudiced by MPT's delay.

Respectfully submitted,

Stephen P. McNamara, ct01220
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut  06905-5619
Phone: (203) 324-6155
Fax: (203) 327-1096

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing:

## DEFENDANT'S PROPOSED FINDINGS OF FACT

is being served on all counsel of record, on this date, by first class mail, postage prepaid, by depositing the same with the United States Postal Service in envelopes addressed to:

Peter L. Costas
Pepe & Hazard LLP
225 Asylum Street
Hartford, Connecticut 06130


Sept. 15, 2005
Date

Stephen P. McNamara